**Magistrate Court**                                              Case ---25
**Tel-Aviv**

The matter that concerns:
Plaintiff:

        **ISSAC LEVI PILANT,** ID #_____
        By way of attorney Adv. Noam Schreiber, Adv. Lic.# 61276
        And Adv. Marc Zell, Adv. Lic.# 12814
        34 Ben Yehuda St., Jerusalem, Israel
        Tel: +972-2-6336300; Fax: +972-2-672-1767

        - vs. -

**Defendant:**

        **YESH DIN- VOLUNTEERS FOR HUMAN RIGHTS**
        Reg. Amuta # 580442622
        **Hachashmonaim 10**
        **Tel-Aviv-Jaffa**
        **6713317**

**Relief/Compensation Value of the Claim for the purposes of court fees**: NIS 2,000,000
**Type of claim**: Defamation

## COMPLAINT

## THE PARTIES

**PLAINTIFF**

1. Plaintiff Issac Levi Pilant ("Pilant" or "Plaintiff") is a dual U.S.-Israeli national, who currently resides in the Jewish community Yitzhar in the northern region of Judea and Samaria.

2. Pilant is a trained firefighter and Israel Defense Forces ("IDF") veteran.

1

3. In 2013 Pilant's IDF superior officers asked him to become the head of security in Yitzhar, a *ravshatz* [IDF coordinator of security]. Pilant accepted this offer. A *ravshatz* is a civilian employed by the community but armed and specially trained by the IDF. A *ravshatz* is provided with a license/mandate/appointment from the army which, in turn, authorizes him to exercise his/her security related duties. A *ravshatz* is considered the community's first line of defence against Palestinian terror attacks and served a crucial and important role, for example, on the October 7 massacre. Although a *ravshatz* is a civilian, he or she is subject to martial law and IDF courts.

4. On October 7, there were serious concerns that similar massacres were going to occur by Palestinian Arabs in Judea and Samaria. On or around October 7, the Brigade Commander at the time, Avi Bloth, requested Pilant to remain in Yitzhar (as opposed to being called up into his regular reserve unit) as the commander of the "Hagmar" (regional defense unit, "RDU") tasked with securing Yitzhar and preventing a similar October 7 massacre. Since October 7, Pilant has been the Captain of the RDU of Yizhar with approximately 60 reserve soldiers under his command. His duties are given to him directly by the army.

5. Throughout his tenure, Pilant has never been charged with a crime. Moreover, The IDF and the Israeli government has never issued any order against Pilant for house arrest or administrative detention under the Emergency Powers Law (Detention), 5739-1979 or the Military Order Concerning Security Provisions (Consolidated Version) (no. 1651), 5770-2009.

6. Throughout his tenure, Pilant has been an awarded multiple times by the IDF for exercising his duties with responsibility, care and honor. He is a respected officer and

2

is known for his peaceful approach to handling complicated and sensitive security-related matters.

7. On August 28, 2024, the Biden Administration announced that it has sanctioned Pilant under Executive Order 14115. According to the Biden Administration, in "February 2024, he [Pilant] led a group of armed settlers to set up roadblocks and conduct patrols to pursue and attack Palestinians in their lands and forcefully expel them from their lands."

8. On the same day, the Office of Foreign Asset Control ("OFAC") announced that it had placed Pilant on Specially Designated Nationals and Blocked Persons list ("SDN list")

9. As a result of the sanctions, all of Pilant's bank accounts and credit cards were frozen, effectively preventing him from receiving any funds, including salaries and other payments.

10. On January 20, 2025, President Donald Trump signed a new Executive Order, "Initial Rescissions Of Harmful Executive Orders And Actions," which, among other actions, revoked EO 14115. As a result, Pilant was removed from the SDN list.

**DEFENDANT**

11. Established in 2005, Defendant Yesh Din is an Israeli organization registered as a non-profit. According to its website, Yesh Din works to "protect the human rights of Palestinians living under Israeli armed forces' occupation. We view the occupation as a main source of the violation of the human rights and therefore seek to end it."

(https://www.yesh-din.org/en/about-us/)

12. Yesh Din describes its work as follows:

> Yesh Din documents, collects and disseminates reliable and updated information regarding systematic human rights violations in the OPT. We have

3

    a two-tiered approach: On the individual level, we work on individual cases to assist those whose rights have been violated. On the systemic level, we use the accumulation of individual incidents to identify structural violations of human rights and advocate for change. Yesh Din conducts public and legal advocacy in order to pressure Israel's authorities to implement their duty according to international humanitarian law to protect the Palestinians and their rights, and raise public awareness to human rights violations in the OPT.

    https://www.yesh-din.org/en/about-us/

13. Yesh Din's website goes on to describe the following activities:

    Yesh Din's work focuses on law enforcement on settlers and other Israeli civilians; criminal accountability of Israeli security forces personnel in the West Bank suspected of offenses against Palestinians; and human rights violations related to takeover of Palestinian land and restricting Palestinians' access to their land.

    [*Id.*]

14. Yesh Din is responsible and liable for making a series of "X" posts defaming Pilant and describing him as a violent warlord who routinely engages in violent conduct against Palestinian Arabs and their property. Nothing could be further from the truth.

4

## THE FACTS ESTABLISHING THE CAUSE OF ACTION

A. **Yesh Din X (Twitter) Defamatory Publications**

15. On August 28, 2024 – the same day that Pilant was sanctioned and placed on the SDN list – Yesh Din published a series of posts on the social media platform known as "X":



16. The posts all deal exclusively with Pilant and accuse him, among other things, of engaging in illegal violence against Palestinian Arabs and their property in Judea and Samaria. The posts include, inter alia, the following defamatory allegations:

(a) Pilant has been identified with incidents of violence towards residents of the Palestinian villages in the Yitzhar area.

5

    **(b)** "Levi is involved in countless incidents of violence and harm against Palestinians and their property."

    **(c)** "Levi and his armed emergency response team, sometimes dressed in military uniforms, have also been operating outside of their jurisdiction, and have abused their authority."

17. Upon information and belief, Defendant Yesh Din is also responsible for providing these false allegations to the U.S. government – either directly or via third-parties – which ultimately caused the previous U.S. government to sanction him under EO 14115.

18. Moreover, these Yesh Din posts were disseminated by Yesh Din to countless third parties and picked up by social media and conventional media. In addition, the series of posts received thousands – if not more – of "views", "shares" and "likes".

    **B.** <u>**Yesh Din spreads the defamatory and false allegations to the Times of Israel**</u>

19. Upon information and belief, Yesh Din contacted the Times of Israel (or vis versa) and exchanged with the Times of Israel the false accusations concerning Pilant.

20. On August 28, 2024, a highly offensive and false article appeared in the "Times of Israel" entitled *US issues new batch of sanctions targeting West Bank settlers amid rampant violence*, available [here](#).

21. The content of the article is a direct result of the August 28 "X" posts published by Defendant Yesh Din. The article reports the following:

> The Yesh Din organization, which campaigns against West Bank settlements, accused Filant of "innumerable acts of violence and harm to Palestinians and their property" in the region around Yitzhar.
>
> "For years, we have documented testimony of his [Levi's] illegal actions, but we also hear from his victims that they are scared to complain about

6

him to the police because of his unlimited power in the region," Yesh Din said in response to the new US sanctions.

"Since the beginning of the [current] war, Levi and his armed civilian security squad, sometimes dressed in army uniforms, leave the area designated to them by law and abuse their authority," the left-wing group added.

C. **Yesh Din spreads defamatory and false allegations to The Guardian**

22. Upon information and belief, Yesh Din contacted the The Guardian (or vis versa) and exchanged with The Guardian the false accusations concerning Pilant.

23. On September 9, 2024, a highly offensive and false article appeared in "The Guardian" entitled *'I am the police, I am the army': blacklisted settler's rule in West Bank.* Available [here](). The article is entirely about Plaintiff Pilant and it is entirely a lie.

24. The article begins by describing Pilant as the "warlord of the whole Jabal Salman valley," falsely accusing him of "frequent and arbitrary use of force" against Palestinians. The article continues to make false allegations against Pilant, including use of force, arson, theft etc.

25. Defendant Yesh Din provided The Guardian with the false and defamatory allegations that are contained in the article. The article makes this very clear:

> Yesh Din, an Israeli human rights organisation which monitors the area, said it had "documented incidents of violence against Palestinians by Israeli settlers and security forces throughout the years, including dozens of incidents involving Filant [*sic*]".

7

D. **Yesh Din's defamatory and false publications regarding Pilant were used by the U.S. government when it decided to sanction Pilant**

26. Upon information and belief, Defendant Yesh Din reached out to members of the previous U.S. government under then-President Biden and provided them with the false and highly defamatory allegations concerning Pilant.

27. Upon information and belief, Defendant Yesh Din was in direct contact with U.S. anti-Israel organizations and provided them with the false and highly defamatory allegations concerning Pilant.

28. Upon information and belief, as a direct result of Yesh Din's actions, the U.S. government erroneously and wrongly placed Pilant on the SDN list.

## THE CLAIMS OF THE PLAINTIFF – THE GROUNDS FOR THIS SUIT: DEFAMATION

A. **First ground for defamation**

29. Plaintiff shall claim that, on account of the aforementioned publications, Defendant Yesh Din is liable pursuant to the Prohibition on Defamation Act, 5725-1965 (the "Act"). Defendant is liable under the Act for the following post of August 28, 2024 on Yesh Din's X account:



30. This post constitutes a publication that is likely to humiliate the individual in the eyes of others or to make him a target for hatred, contempt or ridicule by them, in accordance

with §1 of the Act. The implication of the publication is to say that Plaintiff is identified as someone who violent towards "residents of Palestinian villages in the Yitzhar area." There can be no dispute that this publication is liable to humiliate Plaintiff in the eyes of the viewers and, in fact, had that exact effect.

31. This is a post that was published on "X" and, as such, it constitutes a "Publication" for the purposes of the Act.

32. The post is not a mere opinion, but rather a statement of fact alleging that Plaintiff is violent towards Palestinians.

33. The post is false because Plaintiff is not violent and has not been violent towards Palestinians. The very opposite is true.

34. These statements regarding the falsity of the publication are not intended to shift the burden of proof to the shoulders of Plaintiff and Plaintiff reserves the right to restate these matters should Defendant invoke the defense of truthfulness.

35. As a result of this publication, the plaintiff suffered damages as will be detailed further on and proven at trial.

36. Accordingly, Defendant is liable to Plaintiff for this post in accordance with §§7 and 7a of the Act.

   B. **Second ground for defamation**

37. Defendant is liable under the Law for the following post of August 28, 2024 on Yesh Din's "X" account:



38. The post constitutes a publication that is likely to humiliate the individual in the eyes of others or to make him a target for hatred, contempt or ridicule by them, in accordance with §1 of the Act. In the post, Yesh Din falsely accuses Pilant of being "involved in countless incidents of violence and harm against Palestinians and their property."

39. The post was published on "X" and, as such, it constitutes a "publication" for the purposes of the Act.

40. The post is not a mere opinion, but rather a statement of fact.

41. The post is false because Pilant is not and never was "involved in countless incidents of violence and harm against Palestinians and their property."

42. These statements regarding the falsity of the publication are not intended to shift the burden of proof to the shoulders of Plaintiff and Plaintiff reserves the right to restate these matters should Defendant invoke the defense of truthfulness.

43. As a result of this post, Plaintiff suffered damages as will be detailed further on and proven at trial.

44. Accordingly, Defendant is liable to Plaintiff for this post in accordance with §§7 and 7a of the Act.

C. **Third ground for defamation**

45. Defendant is liable under the Law for the following post of August 28, 2024 on Yesh Din's X account:



46. The post constitutes a publication that is likely to humiliate the individual in the eyes of others or to make him a target for hatred, contempt or ridicule by them, in accordance with §1 of the Act. In the post, Yesh Din falsely accuses Pilant of operating outside his jurisdiction and abusing his authority.

47. The post was published on "X" and, as such, it constitutes a "publication" for the purposes of the Act.

48. The post is not a mere opinion, but rather a statement of fact.

49. The post is false because Pilant did not and never did operate outside his jurisdiction or abused his authority.

50. These statements regarding the falsity of the publication are not intended to shift the burden of proof to the shoulders of Plaintiff and Plaintiff reserves the right to restate these matters should Defendant invoke the defense of truthfulness.

51. As a result of this post, Plaintiff suffered damages as will be detailed further on.

52. Accordingly, Defendant is liable to Plaintiff for this post in accordance with §§7 and 7a of the Act.

**Remedies – Compensation for Defamatory Publications**

53. In light of the scope of the harm inflicted to Plaintiff's good name and to his reputation, the humiliation he suffered and the potential long-term consequences that are likely to occur as a result of prolonged exposure on social networking sites and listings in search engines, the falsity of their publications– the honorable court should award compensation to Pilant.

54. As a direct and proximate result of the defamatory publications, Plaintiff suffered both monetary and non-monetary damages. The non-monetary damages manifest themselves both in the personal and social realm and in the occupational realm.

55. The publications have caused and will continue to cause grievous harm to Plaintiff's reputation which has been harmed and/or continues to be harmed in an extremely severe manner.

56. Any individual who performs a standard search on the Google search engine is exposed to the defamatory publications and will get the impression that Plaintiff is a "warlord" who has perpetrated violence against innocent Palestinians and their property.

57. Plaintiff reserves his right to substantiate these damages during these court proceedings.

58. As a direct and proximate result of Defendant's publications, Plaintiff suffered emotional damage, not the least of which are the feelings of humiliation, disgrace, helplessness that enveloped him at the "smear campaign" of Defendant through the knowledge that a huge amount of web viewers, the precise quantity of whom will never be known to Plaintiff, had access to the harmful words of Defendant.

59. Plaintiff shall claim that the monetary and non-monetary damages that were perpetrated by the Defendant amount to no less than NIS 2,000,000, for filing fee purposes only.

60. Alternatively and cumulatively, i.e., if the damages cannot be empirically proven (both the monetary and non-monetary) as detailed above, Plaintiff requests of the honorable court to assert its authority to invoke paragraph 7a of the Act and to award in favor of Plaintiff the maximum amount allowed that it may rule, with lack of proof of damage-loss, *i.e.*, NIS 50,000 plus the incremental CPI linked percentage in accordance to paragraph 7a(e). The plaintiff shall additionally claim that, under the circumstances – it is befitting that the honorable court double the amount of statutory damages in accordance to paragraph 7a of the statute, *i.e.*, to the amount of NIS 100,000, because this is a case of defamation that was publicized with the intention of inflicting harm. As such, for the three publications of libel that were detailed above, the plaintiff seeks NIS 250,000 (solely for the purposes of court fees) plus the incremental CPI linked percentage in accordance to paragraph 7a(e) of the statute.

61. The Court should take into account the following factors when establishing the amount of damages, whether the compensation is set by virtue of proof of damage/loss or whether it is set by virtue of paragraph 7a of the statute:
    a. The offensive content of the Posts;
    b. The fact that Defendant had the intention to inflict harm upon Plaintiff;
    c. The effect of the Posts on the Plaintiff's family;
    d. The extended period of time that the Posts are accessible;
    e. The extent of public exposure it has had over this time;
    f. The extent of harm that was inflicted on Plaintiff's reputation;

    g. The malicious nature of the publication of the Posts- the fact that Defendant acted in bad faith, knowing that Posts included false statements.

## **Permanent Injunction**

62. Plaintiff petitions the Honorable Court for a permanent injunction against Defendant that forbids Defendant to exercise any activity and publication regarding Plaintiff that can be construed as defamation. Included in this, it is requested that the Honorable Court instruct Defendants to cease and desist from publicizing anything regarding Plaintiff that has the appearance of portraying Plaintiff as a (1) violent person; (2) someone who injures Palestinians or their property; (3) a thief; (4) an arsonist; (5) a criminal; (6) a warlord, and anything similar.

## **Mandatory Injunction**

63. In addition, Plaintiff respectfully requests that the Court instruct Defendant to immediately remove all of the Posts and to delete them, in accordance to §9 of the Act.

64. Moreover, Plaintiff respectfully requests that the Court instruct Defendant to publicize the court ruling on Defendant's website and social media channels, including Defendant's X page. The Honorable Court is requested to instruct that alongside the publication of the court ruling, Defendant must summarize the court ruling in English.

## **PRAYER FOR RELIEF**

65. The Honorable Court is requested to summon Defendant to trial and to decree upon it the following:

    a. To compensate Plaintiff for the monetary and non-monetary damages that came about as a direct consequence of the defamatory Posts published and

    disseminated by Defendant, wherein this sum shall be adjusted for the incremental link to the CPI index and time penalty as prescribed by law, from the day the claim was filed in court to the time it is actually paid;

b. Alternatively, to obligate the defendants to pay the maximum statutory compensation for claims without proof of damage, in accordance with §7a(c) of the Act and to add to this sum the incremental link to the CPI index and time penalty as prescribed by law;

c. To instruct Defendant to remunerate legal expenses, court fees, and legal assistance fees, including VAT payments as prescribed by law and this sum shall be adjusted for the incremental link to the CPI index and time penalty as prescribed by law, from the day the claim was filed in court to the time it is actually paid by the defendants to the plaintiff in full;

d. To order an injunction against Defendant, forbidding it from exercising any further actions that can be deemed defamatory;

e. To issue an injunction against Defendant per ¶¶ ____ above;

f. To issue an injunction against Defendant per ¶¶ ____ above.

**<u>Subject Matter Jurisdiction</u>**

66. This Court has subject matter jurisdiction to adjudicate this lawsuit in light of the amount of monetary relief.

**<u>Personal Jurisdiction</u>**

67. This Court has personal jurisdiction over Defendant because it is an Israeli non-profit corporation, headquartered in Israel.

**<u>Venue</u>**

68. This is the proper venue because the Defendant's headquarters and offices are located in Tel-Aviv.

[Digital Signature]
Adv. Noam Schreiber
Attorney for the Plaintiff

