IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

*In re Application of Issac Levi Pilant,*

| | |
|---|---|
| REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. §1782 | Case No. 25-misc. 760-JMA-LKE |

---------------------------------------------------x

**PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. §1782**

<u>*/s/ Noam Schreiber*</u>
Noam Schreiber, Esq.
(*pro hac vice*)
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
Email: <u>noam.schreiber@fandz.com</u>

<u>*/s/ L. Marc Zell*</u>
L. Marc Zell, Esq.
*Of Counsel*
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
Email: <u>mzell@fandz.com</u>

<u>*/s/ Jeffrey E. Michels*</u>
Jeffrey E. Michels, Esq.
Zell & Associates International
Advocates LLC
1345 6th Avenue 2nd Floor
New York, New York, 10105
Telephone: (212) 971-1349

*Counsel for Applicant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    The discovery being sought will be used in a foreign proceeding .............. 2

    II.    The *Intel* discretionary factors weigh in favor of granting the Application ................................................................................. 4

        A.    Respondents are not parties to the foreign proceeding .............................. 4

        B.    The §1782 Application is not an attempt to circumvent discovery restrictions in the foreign proceeding ............................................... 4

        C.    The Application does not contravene U.S. free speech policies ................ 5

            1.    The First Amendment is not a bar to the discovery being sought ........................................................................................................ 5

            2.    The Application should be granted even assuming the existence of a First Amendment protection ................................................... 6

                (a)    The nature of the foreign proceeding (defamation) weighs in favor of granting the Application ............................................. 7

                (b)    Petitioner has satisfied the heart-of-the-claim test .......................... 8

                (c)    Petitioner has exhausted all other sources ....................................... 8

                (d)    The impact of the requested discovery on First Amendment interests is negligible ............................................................................. 9

            3.    The reporter's privilege does not present an obstacle to the requested discovery ............................................................................................. 10

        D.    The proposed subpoenas are specifically tailored to the issues at bar .... 12

CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amaya v. Bregman,*
   2016 WL 10296798 (D.N.M. May 13, 2016) ...................................................................... 11

*Application of Consumers Union of U. S., Inc.,*
   495 F. Supp. 582 (S.D.N.Y. 1980) ....................................................................................... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   673 F.3d 76 (2d Cir. 2012) ..................................................................................................... 6

*BuzzFeed, Inc. v. U.S. Dep't of Justice,*
   318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................................. 4, 16

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,*
   954 F. Supp. 2d 127 (E.D.N.Y. 2013) ................................................................................. 12

*Chevron Corp. v. Berlinger,*
   629 F.3d 297 (2d Cir. 2011) ........................................................................................... 14, 15

*Cohen v. City of New York,*
   2010 WL 1837782 (S.D.N.Y. May 6, 2010) ....................................................................... 12

*Eshelman v. Puma Biotechnology, Inc.,*
   2017 WL 5919625 (E.D.N.C. Nov. 30, 2017) ............................................................... 12, 16

*Est. of Ungar v. Palestinian Auth.,*
   332 F. App'x 643 (2d Cir. 2009) .......................................................................................... 16

*Ex Parte Darmon,*
   2017 WL 3283969 (N.D. Cal. Aug. 2, 2017) ........................................................................ 7

*Gonzales v. Nat'l Broad. Co.,*
   194 F.3d 29 (2d Cir. 1999) ............................................................................................. 12, 15

*Herbert v. Lando,*
   441 U.S. 153 (1979) ................................................................................................... 9, 11, 14

*In re Application of RSM Prod. Corp. v. Noble Energy, Inc.,*
   195 F. Supp. 3d 899 (S.D. Tex. 2016) .................................................................................... 8

*In re Bacon,*
   2018 WL 4467182 (D. Colo. Sept. 17, 2018) ..................................................................... 11

*In re Klein-Bentsur*,
    2019 WL 650874 (D.N.J. Feb. 15, 2019) ............................................................................. 7

*In re Murchinson Ltd.*,
    2024 WL 489175 (C.D. Cal. Jan. 26, 2024) ......................................................................... 7

*In re O'Keeffe*,
    2015 WL 1308546 (D. Nev. Mar. 24, 2015) ........................................................................ 3

*In re Petroleum Prods. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982) ................................................................................................. 15

*In re Subpoena*,
    2023 WL 4236490 (M.D.N.C. June 28, 2023) ................................................................. 12

*In re Tagami*,
    2021 WL 5322711 (N.D. Cal. 2021) ................................................................................ 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ....................................................................................................... 5, 6

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
    1985 WL 315 (S.D.N.Y. Feb. 28, 1985) .......................................................................... 11

*Kanino v. Kanino*,
    2024 WL 3059058 (C.D. Cal. June 10, 2024) .................................................................... 8

*Matter of Application of O'Keeffe*,
    184 F. Supp. 3d 1362 (S.D. Fla.) ..................................................................................... 16

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................................................ 2, 17

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ......................................................................................................... 8, 10

*N.Y. State Nat'l Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989) ..................................................................................... 10, 11

*NAACP v. Alabama*,
    357 U.S. 449 (1958) .......................................................................................................... 9

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ............................................................................................................ 9

*Solarex Corp. v. Arco Solar, Inc.*,
    121 F.R.D. 163 (E.D.N.Y. 1988) ...................................................................................... 9

*Tavoulareas v. Piro*,
    93 F.R.D. 35 (D.D.C. 1981) .................................................................................... 11

*United States v. Google LLC*,
    690 F. Supp. 3d 1011 (N.D. Cal. 2023) ............................................................... 13

*Vaigasi v. Solow Mgmt. Corp.*,
    2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ......................................................... 16

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) ................................................................................ 12

*Weinstein v. Brisman*,
    2020 WL 1485960 (D.N.J. Mar. 26, 2020) .................................................... 4, 16

**Statutes**

28 U.S.C. §1782 ................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 45(e)(2)(A)(i)–(ii) ............................................................................. 15

**Other Authorities**

Tony Abdollahi, *The Hague Convention: A Medium for International Discovery*,
    40 N.C. J. INT'L L. & COM. REGUL. 771 (2014) ...................................................... 8

## PRELIMINARY STATEMENT

This matter arises from an application under 28 U.S.C. §1782 seeking discovery for use in a defamation proceeding in Israel. The First Amendment staunchly protects free speech and press; however, it does not serve as an absolute shield against accountability for defamatory falsehoods or related discovery procedures. Equally vital is an individual's right to defend their name and reputation from baseless attacks. Petitioner, Mr. Pilant, a dual U.S.-Israeli national, seeks not to suppress expression but to uncover the truth, requesting discovery critical to restoring his reputation in the Israeli lawsuit. Respondents attempt to cloak their objections in the First Amendment, yet Petitioner is entitled to this information to clear his name from unjust harm.

Respondents' arguments fail because the discovery sought is directly relevant and permissible under §1782, as it supports key elements of the defamation claim in the Israeli proceeding. Their invocation of the First Amendment and reporter's privilege is misplaced, as these protections do not shield against discovery essential to proving defamation. Moreover, the subpoenas are precisely tailored to uncover only the information necessary for the Israeli court, and granting this discovery upholds international comity by assisting in a just resolution.

# ARGUMENT

## I. The discovery being sought will be used in a foreign proceeding

The "for use" requirement under 28 U.S.C. §1782 merely demands that the requested discovery "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (reversing the denial of §1782 discovery in a Dutch defamation case). Here, the discovery sought from DAWN is directly connected to the defamation claims and will undoubtedly provide "some advantage" in the foreign proceeding. Specifically, it is likely to assist Petitioner in establishing essential elements of the defamation claim—such as the falsity of the allegations, knowledge of falsity, reliance, and Yesh Din's negligence or recklessness. These issues are highly relevant and material to the adjudication of the case abroad.

Respondents argue that Yesh Din's August 28, 2024 posts, following DAWN's August 26 submission, show no influence from DAWN, deeming discovery irrelevant. However, the complaint alleges that Yesh Din-DAWN cooperation—not the posts—caused Pilant's improper sanctioning. Evidence of Yesh Din passing off falsehoods to DAWN, which later published publicly and disseminated to third parties like the U.S. government, remains highly relevant to liability and damages in the foreign proceeding.

Respondents' final argument under the "for use" prong is that any document or communication "mentioning, discussing, or concerning" Pilant is *ipso facto* irrelevant. This mischaracterizes both §1782 practice and defamation law. In libel actions, uncovering the full chain of how false allegations travelled and

2

unravelled—from originator to amplifier—is essential. Courts applying §1782 in defamation contexts regularly permit discovery from intermediaries whose records can illuminate allegations such as malice, recklessness, and falsity. *In re O'Keeffe,* 2015 WL 1308546, at *1 (D. Nev. Mar. 24, 2015) (allowing §1782 discovery for use in Hong Kong defamation lawsuit). A straightforward example will demonstrate this obvious point. Imagine Yesh Din provided DAWN with raw reports or evidence concerning Petitioner's alleged violence towards Palestinians in Judea and Samaria. DAWN's in-house team then drafts an internal memo questioning the reliability of eyewitness accounts and urging further investigation. Even though Yesh Din never authored or published that memo, that type of evidence would be of critical importance in the foreign proceeding. Such discovery is routinely authorized by U.S. courts in defamation cases. *See also, e.g., Weinstein v. Brisman*, 2020 WL 1485960, at *1, *6 (D.N.J. Mar. 26, 2020) (upholding subpoena in defamation case for communications concerning the plaintiff and other relevant matters); *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 364-365 (D.D.C. 2018) (allowing third party discovery in the the context of a defamation lawsuit).

The proposed subpoenas are narrowly designed to capture any DAWN record "mentioning, discussing, or concerning" Pilant which would include only those documents that refer to him in the context of the alleged (and false) violent activities. For these reasons, discovery of DAWN's internal and third-party communications are precisely the type of fact-driven, non-privileged evidence that §1782 exists to secure. This tailored discovery cannot be dismissed as mere

"fishing"; instead, it is the roadmap to understanding—and challenging—the falsity of the defamatory charges against Mr. Pilant.

## II. The *Intel* discretionary factors weigh in favor of granting the Application

The *Intel* discretionary §1782 factors weigh in favor of granting this Application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Specifically, Respondents are not parties to the foreign proceeding; the relief being sought does not bypass Israeli law or practice; the subpoenas are narrowly tailored and clearly not overly broad; and the Application does not contravene U.S. free speech policies.

### A. Respondents are not parties to the foreign proceeding

*Intel*'s first discretionary factor evaluates whether the foreign tribunal has jurisdiction and can compel evidence production. *Intel*, 542 U.S. at 264. Neither DAWN nor Whitson is a party to the foreign proceeding, and the discovery sought is exclusively with Respondents, unavailable through Yesh Din or the Israeli court [*see* below, Section II.C.2(3)].

### B. The §1782 Application is not an attempt to circumvent discovery restrictions in the foreign proceeding

The third *Intel* factor is decisively met.[1] Foreign discovery limitations don't constrain §1782 rulings— *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673

---

[1] Regarding the second *Intel* factor, Respondents argue in a footnote that Pilant's Israeli lawsuit clashes with U.S. free speech policies because it involves defamation claims without a need to prove damages. However, the lawsuit targets false accusations of illegal violence, which U.S. law also treats as defamation *per se*—presuming damages just as Israeli law does. Thus, any differences in defamation law between the U.S. and Israel are irrelevant and do not justify denying the §1782 Application.

4

F.3d 76, 82 (2d Cir. 2012) shuts down that argument (just "as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application"). Advocate Marc Zell's expert opinion (Zell Decl., ECF 19-1, ¶¶8-12) confirms that §1782 fully aligns with Israeli law, which is further supported by the fact that U.S. courts routinely greenlight §1782 applications for Israeli cases. *See In re Murchinson Ltd.*, 2024 WL 489175, at *4 (C.D. Cal. Jan. 26, 2024); *In re Klein-Bentsur*, 2019 WL 650874, at *4 (D.N.J. Feb. 15, 2019); *Ex Parte Darmon*, 2017 WL 3283969 (N.D. Cal. Aug. 2, 2017); *Kanino v. Kanino*, 2024 WL 3059058, at *4 (C.D. Cal. June 10, 2024); *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.,* 195 F. Supp. 3d 899 (S.D. Tex. 2016). Respondents' objection collapses under its own weight.

## C. The Application does not contravene U.S. free speech policies

### 1. The First Amendment is not a bar to the discovery being sought

The Supreme Court has acknowledged the "important social values which underlie the law of defamation," and recognized that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 22 (1990), *citing Rosenblatt v. Baer,* 383 U.S. 75, 86 (1966). Echoing this basic concern, the Supreme Court in *Herbert v. Lando*, 441 U.S. 153 (1979) held that "speading false information […] carries no First Amendment credentials." There, the Supreme Court rejected a similar privilege in

5

a defamation case, holding that shielding journalists from discovery would undermine defamation liability.[2]

Respondents claim a First Amendment privilege against discovery, arguing that the subpoenas would chill protected activities and that Petitioner hasn't shown a compelling interest, citing *NAACP v. Alabama,* 357 U.S. 449 (1958) and *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989). The complaint, however, alleges that Yesh Din and Respondents knew the publications were false or recklessly disregarded the truth, stripping First Amendment protection from the information sought. *In re Tagami*, 2021 WL 5322711 (N.D. Cal. 2021) *citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (in §1782 motion, limiting concern where foreign defamation claim is based on intentionally false statement, thus likely unprotected by First Amendment). Thus, Respondents' First Amendment claim fails.

## 2. The Application should be granted even assuming the existence of a First Amendment protection

Assuming, *arguendo*, that Respondents enjoy First Amendment protections, those rights are not absolute and discovery must be assessed on the facts of each case. Courts consider four factors: (1) the nature of the suit; (2) whether the information sought is central to the claim; (3) whether other sources have been exhausted; and (4) the impact on First Amendment interests. *Application of Consumers Union of U. S., Inc.*, 495 F. Supp. 582, 586 (S.D.N.Y.

---

[2] *But see Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 172 (E.D.N.Y. 1988), *subsequently aff'd*, 870 F.2d 642 (Fed. Cir. 1989) limiting *Hebert*'s scope to defendant journalists being sued for defamation. The Supreme Court did not explicitly make such a distinction, and, to the best of counsels' knowledge, the Second Circuit has yet to been presented with the issue.

1980). Applied here, all four *Consumers Union* factors support granting Petitioner's §1782 Application.

### (a) The nature of the foreign proceeding (defamation) weighs in favor of granting the Application

Because the foreign lawsuit is a defamation suit, First Amendment protections for editorial or newsgathering activities are more limited than Respondents claim. *Tavoulareas v. Piro*, 93 F.R.D. 35, 42 (D.D.C. 1981), *citing Herbert*, 441 U.S. 153. *Herbert*, *Tavoulareas* and their progeny recognize that denying all discovery erects an almost insurmountable barrier for defamation victims. *See In re Bacon*, 2018 WL 4467182, at *5 (D. Colo. Sept. 17, 2018); *Amaya v. Bregman*, 2016 WL 10296798, at *5 (D.N.M. May 13, 2016). Applying these principles here tips the first *Consumers Union* factor decisively in Petitioner's favor. [3]

---

[3] Notably, every case Respondents invoke for First Amendment or privilege defenses involves non-defamation claims:

- *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) (anti-abortion protest/injunction under § 1985 and state law);
- *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315 (S.D.N.Y. Feb. 28, 1985) (leafletting and solicitation);
- *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017), *aff'd*, 705 F. App'x 10 (2d Cir. 2017) (ordinance challenge);
- *Cohen v. City of New York*, 2010 WL 1837782 (S.D.N.Y. May 6, 2010) (2004 RNC arrests);
- *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999) (§1983 civil-rights action);
- *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) (RICO).

**(b) Petitioner has satisfied the heart-of-the-claim test**

The requested discovery goes to the very "heart" of the Israeli defamation case: internal DAWN documents/communications, as well as communications between DAWN and third parties are essential to proving the falsity, scope, impact, and intent behind the allegations. The Complaint alleges Yesh Din's long-standing investigation of Pilant, its sharing of that information with DAWN, and DAWN's subsequent transmission to others—including the U.S. government—which culminated in sanctions and reputational harm. These aren't mere "hopes" – as wrongly characterized by Respondents – but factual allegations unchallenged by DAWN, making this tailored, non-party discovery not only routine in defamation suits but indispensable here. *See Eshelman v. Puma Biotechnology, Inc.*, 2017 WL 5919625, at *5 (E.D.N.C. Nov. 30, 2017) (finding highly relevant, narrowly tailored information available only from the non-party justified subpoenas)*; In re Subpoena*, 2023 WL 4236490, at *6 (M.D.N.C. June 28, 2023).[4] *See also* **Section I** above.

**(c) Petitioner has exhausted all other sources**

This factor is plainly satisfied: the information at issue here – internal DAWN documents and communications and DAWN communications to third parties — is exclusively in Respondents' hands. In addition, Israeli law offers no means to compel evidence from foreign non-parties, and §1782 is the only available mechanism. Respondents identify no Israeli procedure to obtain these

---

[4] Again, all the cases relied upon Respondents do not involve defamation claims.

8

documents[5]—and Yesh Din itself cannot produce the narrowly tailored materials the subpoena demands. *See* also Zell Decl., ¶¶3-6;

### (d) The impact of the requested discovery on First Amendment interests is negligible

Respondents claim that compelling discovery will chill their core First Amendment activities [ECF 12, at 10]. That contention is unfounded for four reasons.

*First*, the subpoenas seek only documents and communications about Mr. Pilant—not any informant names or personal data. If source privacy is a concern, the Court can issue a protective order, permit redactions, or seal sensitive filings—time-honored safeguards that preserve confidentiality without obstructing access to essential evidence.

*Second*, DAWN's parade of horribles is purely speculative and self-serving. Respondents offer no instance of any source or partner declining to cooperate, nor any past misuse of discovery to frustrate DAWN's investigations. Mere fear of hypothetical reprisal cannot override §1782's twin goals of truth-seeking and judicial assistance. *See also* Pilant Decl., ¶¶3-6 [ECF 19-2].

*Third*, DAWN has submitted zero corroborative evidence that its staff or sources ever suffered real-world retaliation based on compelled discovery or

---

[5] Respondents' expert refers to the "Regulations for the Implementation of the Hague Convention of 1970 (Collection of Evidence), 5737-1977" [*see* ECF 12-2, ¶16-18; ECF 12, at 20]. However, the availability of the Hague Convention does not in anyway prevent litigants from using the much more efficient methods under §1782. *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1016 (N.D. Cal. 2023), *quoting* Tony Abdollahi, *The Hague Convention: A Medium for International Discovery*, 40 N.C. J. INT'L L. & COM. REGUL. 771, 799-800 (2014) ("[A] foreign litigant may proceed under section 1782, the Hague Convention, or both.").

9

whether they will suffer any retaliation in connection with the present litigation. Vague assertions of potential harm do not meet the threshold for invoking a privilege or shutting off discovery altogether. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 310 (2d Cir. 2011) (rejecting similar argument in context of a §1782 application).

*Fourth*, permitting this narrowly tailored discovery will not chill DAWN's advocacy; it will reinforce professional and ethical standards.[6] The prospect of §1782 scrutiny encourages human-rights organizations to conduct investigations diligently, maintain accurate records, and apply rigorous fact-checking – thereby enhancing, not impairing, the quality and credibility of public policy work. *See Herbert*, 441 U.S. at 171-174.[7]

### 3. The reporter's privilege does not present an obstacle to the requested discovery

Respondents contend that the sought after discovery is protected by the "reporter's privilege." *See Chevron Corp.*, 629 F.3d at 306 (recognizing reporter's privilege). Even assuming, however, for argument's sake, that the reporter's privilege applies here, it should yield in the presence of the greater public interest embodied in the relief sought through this Application.[8]

---

[6] For example, Yesh Din (and DAWN) clearly got it wrong when they targeted Pilant, a **U.S. citizen.** *See* Pilant Decl., ¶8.

[7] Although *Amici* [ECF 14-1] also invoke sweeping concerns about a "chilling effect" on human-rights reporting, this §1782 Application is strictly limited to communications and documents concerning the dissemination of specific, false allegations against Mr. Pilant—nothing more. It does not seek unpublished source materials, informant identities, or the like and thus presents no credible risk of revealing confidential sources or discouraging legitimate First Amendment activity. And while Respondents would have this Court read in a blanket reporter's-privilege immunity, §1782 expressly permits narrowly tailored discovery that serves the twin aims of providing efficient means of assistance to participants in international litigation while respecting privileged materials—and this request strikes that careful balance.

[8] Petitioner denies that DAWN qualifies for the reporter's privilege. Privilege applies only if DAWN independently collected and created the information; if Yesh Din merely passed data along for

In determining whether the qualified reporter's privilege must yield, courts in this Circuit consider (a) whether the discovery is relevant; (b) whether the discovery is necessary to the maintenance of the claim; and (c) whether the discovery is available from other sources. *See Gonzales*, 194 F.3d at 35; *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5 (2d Cir. 1982). Here, as already discussed, these factors overwhelmingly support disclosure.[9]

The discovery being sought is highly relevant to the defamation lawsuit in Israel. This matter was discussed in depth above and we respectfully refer the Court to that section of the Brief.

The information is also *necessary* to the maintenance of the claim because Respondents hold unique knowledge critical to Petitioner's claims. DAWN's internal communications and reliance on Yesh Din's reports (or vice versa), as well as communications between DAWN and third parties, are indispensable for establishing matters such as scope, impact, intent, causation and, most importantly, falsity [ECF 6, at 14]. Again, we respectfully refer the Court to **Sections I and II.C.2(2)** above.

Last, as already discussed, the information being sought is in the exclusive possession of Respondents and Petitioner cannot obtain this discovery through other sources. *See* **Section II.C.2(3)** above.

---

DAWN to publish, DAWN loses that independence—and the privilege disappears. *Chevron Corp.*, 629 F.3d at 307. Respondents offer no evidence on this point. Further, Rule 45(e)(2)(A) mandates that any privilege claim must "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(i)–(ii). Respondents have not complied with this rule.

[9] Because the issues here overlap with those in the context of the First Amendment argument, we address them briefly and respectfully refer the Court to the previous section(s) of this Brief.

11

**D. The proposed subpoenas are specifically tailored to the issues at bar**

Respondents' last argument is that the document subpoena [ECF 2] is overly broad, citing *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *6 (S.D.N.Y. Feb. 16, 2016) and *Est. of Ungar v. Palestinian Auth.*, 332 F. App'x 643 (2d Cir. 2009). But this objection is misplaced. The subpoena contains only six targeted requests, all specific to Pilant—unlike the blanket demands in the cases cited.[10] Each request is narrowly tailored by party, subject matter, purpose, and time frame. These are not fishing expeditions, but focused inquiries—more akin to the upheld subpoenas in *Weinstein*, 2020 WL 1485960, at *6; *BuzzFeed, Inc.*, 18 F. Supp. 3d at 364-365; *Eshelman*, 2017 WL 5919625, at *5; *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1365, 1369–1371 (S.D. Fla.), *aff'd sub nom. In re O'Keeffe*, 660 F. App'x 871 (11th Cir. 2016), where courts found requests reasonable and relevant, not harassing or cumulative.

Respondents also claim the deposition subpoenas are "unbounded and woefully imprecise" [ECF 12, at 24], but that claim, too, fails. The proposed topics are standard in defamation cases and directly target Pilant and the defamatory statements at issue in the foreign proceeding. Far from vague, they are narrowly focused and highly relevant.[11]

---

[10] In *Vaigasi*, the discovery request at issue "was 168 pages long and consisted of 1,027 individual requests." *Id.*, at *7. *In Est. of Ungar*, the Second Circuit affirmed a ruling of the district court quashing a subpoena "which asked for essentially every document White & Case LLP possessed relating to its representation of Orascom all over the world—because it was overly broad and burdensome." *Id.*, at 645. Also, the purpose of the subpoena was to establish personal jurisdiction. *Id.*

[11] Even if we were to assume the requests are overbroad (which they are not), outright denial is not the appropriate response. *Mees*, 793 F.3d at 302 (limiting overbroad §1782 discovery requests is preferable to outright denial).

12

## CONCLUSION

Mr. Pilant's reputation, life and livelihood have been unjustly tarnished by false allegations, and the discovery sought through this §1782 Application is critical to restoring his good name through the foreign proceeding. Respondents' First Amendment and reporter's privilege objections do not outweigh the compelling need for this evidence, which is narrowly tailored to uncover the falsity and related aspects of the defamation claim. The *Intel* factors strongly favor granting the Application, as the discovery is relevant, necessary, and unobtainable elsewhere. Any minimal impact on Respondents' rights can be mitigated with routine protective measures. Accordingly, the Court should grant the Application and permit this vital discovery to proceed.

Respectfully submitted,

<u>Date</u>: May 9, 2025

*/s/ Noam Schreiber*
Noam Schreiber, Esq.
(*pro hac vice*)
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email: noam.schreiber@fandz.com*

*/s/ L. Marc Zell*
L. Marc Zell, Esq.
*Of Counsel*
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email: mzell@fandz.com*

*/s/ Jeffrey E. Michels*
Jeffrey E. Michels, Esq.
Zell & Associates International Advocates LLC
1345 6th Avenue 2nd Floor
New York, New York, 10105
Telephone: (212) 971-1349

*Counsel for Applicant*

13

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 3,362 words. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

*/s/ Noam Schreiber*
Noam Schreiber, Esq.
(*pro hac vice*)
ZELL, ARON & CO.
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email:* noam.schreiber@fandz.com