IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------x

*In re Application of Issac Levi Pilant,*

REQUEST FOR DISCOVERY PURSUANT TO
28 U.S.C. §1782

                                                             Case No. 25-misc. 760-JMA-LKE

-----------------------------------------------------x

# DECLARATION OF LAWRENCE MARC ZELL

I, L. MARC ZELL, declare as follows:

1. I am an attorney admitted to practice in the United States and Israel, with extensive experience in cross-border civil litigation and Israeli civil procedure and defamation law.

2. I submit this declaration in support of an application under 28 U.S.C. § 1782 for discovery for use in a proceeding pending before an Israeli court.

3. In making this declaration, I have reviewed the docket in the case *In re Pilant*, Case No. 25-misc. 760-JMA-LKE, currently pending in the United States District Court for the Eastern District of New York.

4. Specifically, I address:

    (i)   the availability of third-party discovery under Israeli law;
    (ii)  whether Section 1782 discovery circumvents or complements Israeli procedure;
    (iii) the critical role of non-party information in Israeli defamation cases; and
    (iv)  the relationship between statutory damages and the scope and impact of defamatory publications.

**Third-Party Discovery Under Israeli Law**

3. Israeli civil procedure provides only very limited mechanisms to obtain discovery from third parties, in stark contrast to U.S. federal practice. The Civil Procedure Regulations, 5779–2018, which took effect January 1, 2021, govern discovery in Israel, but document disclosure and interrogatories (Sections 56–59) apply only between named parties, not non-parties.

4. To obtain documents or testimony from a non-party, an application under Section 69 of those Regulations is required; the court may grant or tailor relief only upon a showing of necessity and relevance, and it exercises broad discretion in limiting scope. A Section 69 motion is rarely granted and does not apply to foreign (non-Israeli non-parties).

5. Israel has no equivalent to a U.S. *subpoena duces tecum* under Rule 45 or to depositions upon oral examination; thus, compelled pretrial examination of non-parties simply does not exist under Israeli rules.

6. The non-party discovery sought in the U.S. proceeding—particularly relevant documents and communications of DAWN—would not be obtainable in Israel. While it is true that communications between DAWN and Yesh Din would theoretically be available in the Israeli lawsuit, that is not the case for documents and communications within DAWN and between DAWN and third parties.

**Section 1782 Discovery as a Complement to Israeli Practice**

8. Section 1782 authorizes district courts to order U.S. discovery for use in foreign proceedings precisely because many jurisdictions—including Israel—lack comparable discovery tools.

9. Far from undermining Israeli courts, Section 1782 aligns with Israel's international-assistance framework, notably the Legal Assistance among States Law, 5758–1998, and Israel's accession to the Hague Evidence Convention (1970), under which evidence may be obtained abroad by Letters of Request.

10. The Hague Convention procedures and interstate mutual-assistance laws require court oversight and can be slow; Section 1782 offers a direct, efficient alternative for securing critical non-party evidence.

11. Israeli courts routinely admit evidence obtained abroad, provided it meets Israeli admissibility standards and public-policy constraints; there is no blanket bar to such materials.

12. In practice, Israeli litigants invoke Section 1782 to obtain documents and testimony from U.S. banks, email providers, and fact-witnesses, supplementing limited domestic discovery and ensuring access to essential evidence. Moreover, often Israeli parties use Section 1782 to take the depositions of non-parties for use in an Israeli proceeding. This is common practice and is not in anyway a circumvention or inconsistent with Israeli law or practice.

**Israeli Defamation Law**

13. Israeli defamation law is codified principally in the Defamation (Prohibition) Law, 5725–1965 ("Defamation Law"), which creates parallel civil and criminal remedies for both libel and slander and reflects a synthesis of British common-law principles, American jurisprudence, and Jewish ethical norms against lashon hara ("evil tongue").

14. Under the Law, any false publication tending to harm another's reputation is actionable per se, with (1) truth; (2) fair comment, and (3) certain official or good-faith communications, serving as key defenses.

15. Equitable relief is also available. Injured parties may seek injunctions or apologies. Recent jurisprudence has extended liability to online platforms and reaffirmed a balancing approach weighing freedom of expression against reputational interests.

**Statutory Foundation**

16. The Defamation Law, 5725–1965, defines "defamation" as any publication of an untrue matter that may lower an individual's standing in the eyes of reasonable members of society or otherwise impair their dignity. Defamation Law, §1.

17. It applies equally to libel (written or other permanent forms) and slander (oral or transient statements), establishing strict liability in that plaintiffs need not prove special damages to prevail.

**Civil Liability: Elements and Remedies**

18. A plaintiff must establish (1) publication to at least one third party, (2) defamatory meaning—an assertion lowering the plaintiff in public estimation—and (3) falsity of the statement, subject to the statutory presumption of falsity unless the defendant proves truth.

19. As already mentioned, fault in the form of malice (knowledge of falsity or reckless disregard) is not a prerequisite for liability, but triggers enhanced damages.

20. Under §7(a) of the Defamation Law, a successful plaintiff may elect up to NIS 50,000 in statutory damages without proving actual loss; However, once malice is demonstrated, that cap doubles to NIS 100,000.

21. Courts routinely award additional general damages for reputational harm, emotional distress, and the breadth/scope/impact of publication.

22. Civil actions under the Defamation Law are subject to a two-year statute of limitations, running from the date of publication.

**Defenses and Privileges**

23. Truth remains an absolute defense: if the defendant proves the substantial truth of the challenged statements, liability is entirely foreclosed.

24. Honest expression of opinion on matters of public interest is privileged, provided it is based on true or privileged facts and made without malice.

25. Communications in parliamentary, judicial, or certain official proceedings enjoy absolute privilege. Other contexts—such as employment references or peer-review reports—attract qualified privilege, rebuttable only by proof of malice.

**Online Defamation and Platform Liability**

26. Israeli courts have extended the Defamation Law to internet publications, ordering takedowns and clarifications. Recent decisions hold that both original posters and republishers (*e.g.*, "share" functions) can incur liability.

27. Platform operators may face secondary liability where they fail to remove defamatory content after notice.

**Conclusion**

20. In summary:

   A. Israeli third-party discovery is narrow, discretionary, and procedurally cumbersome;

   B. Section 1782 discovery complements, rather than circumvents, Israeli practice and is consistent with mutual-assistance treaties;

   C. non-party information is indispensable to proving falsity, malice, negligence, and recklessness in defamation actions; and

        D. although statutory damages exist, courts integrate detailed culpability-scope-and-impact evidence in liability and quantum determinations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2025

_____
L. Marc Zell