UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

*In re:* APPLICATION OF ISAAC LEVI PILANT, FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

Case No. 1:25-mc-00760-JMA-LKE

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN RESPONSE TO BRIEF OF *AMICI CURIAE*
VICTORIA COATES, ROBERT GREENWAY, STANDWITHUS SAIDOFF LEGAL,
AND ZIONIST ORGANIZATION OF AMERICA**

Timothy W. Grinsell
Margaret B. Hoppin
Hoppin Grinsell LLP
11 Hanover Street
New York, NY 10005
(646) 475-9554
tim@hoppingrinsell.com

Jake Karr
Technology Law & Policy Clinic
245 Sullivan Street
New York, NY 10012
(212) 998-6042
jake.karr@nyu.edu

*Counsel for Respondents
Democracy for the Arab World Now, Inc. and Sarah Leah Whitson*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................... 1

    I.    The Coates *Amici* Fail to Aid the Court by Presenting Irrelevant Arguments and Personal Attacks. ...................................................................................... 1

    II.    The Coates *Amici* Do Not Help Petitioner Demonstrate Any Connection Between the Requested Discovery and Petitioner's Hypothetical Claims in the Foreign Proceeding. ............................................................................................... 3

    III.    Respondents Engage in a Wide Range of Constitutionally Protected Activity That Would Be Chilled by the Requested Discovery. ................................................. 7

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
    954 F. Supp. 2d 127 (E.D.N.Y. 2013) .................................................................................. 4

*Fighting Finest, Inc. v. Bratton*,
    95 F.3d 224 (2d Cir. 1996) ..................................................................................................... 9

*In re Ativos Especiais II*,
    2024 WL 4169550 (S.D.N.Y. Sept. 12, 2024) ........................................................................ 3

*In re Harbour Victoria Inv. Holdings Ltd.*,
    2015 WL 4040420 (S.D.N.Y. June 29, 2015) ........................................................................ 7

*In re Petroleum Prods. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982) ....................................................................................................... 4

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
    1985 WL 315 (S.D.N.Y. Feb. 28, 1985) ................................................................................ 7

*Mangouras v. Squire Patton Boggs*,
    980 F.3d 88 (2d Cir. 2020) ..................................................................................................... 4

*N.Y. State Nat'l Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989) ................................................................................................. 9

*Schiller v. City of New York*,
    245 F.R.D. 112 (S.D.N.Y. 2007) ......................................................................................... 10

*Strougo v. Scudder*,
    1997 WL 473566 (S.D.N.Y. Aug. 18, 1997) ......................................................................... 3

**Statutes**

28 U.S.C. § 1782 ........................................................................................................... 2, 5, 7, 11

**Other Authorities**

Adam Shapiro, *'From Every Side in Palestine, You Are Under Attack.' NGO Director Ubai Al-Aboudi on Reforming Palestinian Politics*, DAWN: Democracy in Exile (Apr. 12, 2023) ..... 2

Katie J.M. Baker, *The Group Behind Project 2025 Has a Plan to Crush the Pro-Palestinian Movement*, N.Y. Times (May 20, 2025) ............................................................................... 2

Omar H. Rahman, *More Repressive and Less Legitimate: The Unaccountable Palestinian Authority*, DAWN: Democracy in Exile (July 14, 2021) .......................................................... 2

## PRELIMINARY STATEMENT

Even with the benefit of the parties' full briefing and the unexplained untimeliness of their brief, *Amici* Heritage Foundation employees Victoria Coates and Robert Greenway, StandWithUs Saidoff Legal, and the Zionist Organization of America ("Coates *Amici*") offer nothing that aids the Court in its consideration of the issues before it. The Coates *Amici* have filed a brief principally laden with irrelevances and personal attacks. Where their brief purports to address the case at hand, the Coates *Amici* ignore dispositive arguments, misstake relevant law, and mischaracterize both Petitioner's discovery requests and Respondent Whitson's sworn declaration. In attempting to lend Petitioner an extra hand, the Coates *Amici* have dug his hole even deeper.[1]

## ARGUMENT

**I.    The Coates *Amici* Fail to Aid the Court by Presenting Irrelevant Arguments and Personal Attacks.**

The Coates *Amici* begin by raising strawman arguments that Respondents have not advanced and that have no bearing on this proceeding. *See* Coates *Amici* Br. 2–4, ECF No. 21-1 (arguing that "[t]here is no federal statute providing for the confidentiality of NGO reports"); *id.* at 4–10 (arguing that nonprofit organizations should not be "automatically immune from discovery"). The Coates *Amici* then segue into equally irrelevant ad hominem attacks on Respondents, reserving particular vitriol for Respondent Whitson. Echoing Petitioner's supplemental declaration, Pilant Suppl. Decl. ¶¶ 9–13, the Coates *Amici* denigrate Respondents

---

[1] In their motion for leave to file, the Coates *Amici* represented to the Court that their brief would primarily assist it in understanding unspecified "national security risks implicated by" an unspecified "position that Respondents and Amici in support of them advance." Coates *Amici* Mot. 2, ECF No. 21. These risks evidently do not exist; the *amicus* brief does not put forth any.

1

with false tropes and baseless name-calling[2] belied by even the most cursory glance at DAWN's work and website as well as Respondent Whitson's declaration.[3]

Such tactics reveal (at best) that the Coates *Amici*, like Petitioner, misunderstand the nature and purpose of a § 1782 proceeding. It is not an opportunity to engage in character assassination through litigation. It is also not a "forum" for Petitioner to "vindicate [his] rights" against DAWN to counter what he believes are its "extremist views" and to deter what he believes are its "defamatory statements" and "reckless reporting." Coates *Amici* Br. 10–12; *see also, e.g.*, Reply Br. 6, ECF No. 19 (alleging that Respondents acted with actual malice, a defamation standard irrelevant to this case); *id.* at 10 (revealing that Petitioner improperly intends for the "prospect of §1782 scrutiny" to impact DAWN's First Amendment-protected activities); Pilant Suppl. Decl. ¶ 4, No. 19-2 (asserting that Petitioner has no "means by which to vindicate or defend the harm to my reputation outside of this proceeding"); *id.* ¶ 13 (asserting that DAWN "defame[d]" Petitioner

---

[2] *Amici* Coates and Greenway have openly broadcast that they are engaged in a far-reaching project to wield such attacks to silence free speech and human rights advocacy in the United States, including through the courts. *See* Katie J.M. Baker, *The Group Behind Project 2025 Has a Plan to Crush the Pro-Palestinian Movement*, N.Y. Times (May 20, 2025), https://www.nytimes.com/2025/05/18/us/project-esther-heritage-foundation-palestine.html. They appear to believe—mistakenly—that the instant proceeding can serve as a vehicle to expand that project.

[3] DAWN has been critical of human rights abusers across the Middle East and North Africa ("MENA"), including both Israelis and Palestinians as well as autocratic Arab regimes in countries such as Saudi Arabia, Egypt, the United Arab Emirates, and Jordan. Whitson Decl. ¶¶ 9, 19–20; *see, e.g.*, Adam Shapiro, *'From Every Side in Palestine, You Are Under Attack.' NGO Director Ubai Al-Aboudi on Reforming Palestinian Politics*, DAWN: Democracy in Exile (Apr. 12, 2023), https://dawnmena.org/from-every-side-in-palestine-you-are-under-attack-ngo-director-ubai-al-aboudi-on-reforming-palestinian-politics; Omar H. Rahman, *More Repressive and Less Legitimate: The Unaccountable Palestinian Authority*, DAWN: Democracy in Exile (July 14, 2021), https://dawnmena.org/more-repressive-and-less-legitimate-the-unaccountable-palestinian-authority. Respondent Whitson has a demonstrated and distinguished record advocating for accountability across the region. Whitson Decl. ¶ 3 & Publications (listing articles calling for U.S. recognition of the Armenian genocide and condemning abuses in virtually every MENA country).

and that Petitioner seeks discovery so he can "litigate" "defamation claims" against DAWN). The Coates *Amici* have abused the privilege that the Court afforded them in permitting them to participate in this proceeding. *See Strougo v. Scudder*, 1997 WL 473566, at *3 (S.D.N.Y. Aug. 18, 1997) ("Federal courts have discretion to permit participation of amici where such participation will not prejudice any party and may be of assistance to the court.").

**II.     The Coates *Amici* Do Not Help Petitioner Demonstrate Any Connection Between the Requested Discovery and Petitioner's Hypothetical Claims in the Foreign Proceeding.**

The Coates Amici repeat Petitioner's own failure to connect the requested discovery to Petitioner's hypothetical claims against Yesh Din, offering vague, incomplete, and inconsistent theories that further expose the impermissible fishing expedition in which Petitioner is engaged. *See In re Ativos Especiais II*, 2024 WL 4169550, at *9 (S.D.N.Y. Sept. 12, 2024). Like Petitioner, the Coates *Amici* simply ignore the draft complaint that Petitioner has submitted to the Court as the basis for his Application, making no attempt to justify the requested discovery in light of Petitioner's asserted claims, which are based on public statements Yesh Din made on social media. Like Petitioner, the Coates *Amici* also suggest that Petitioner should be permitted wide-ranging discovery based purely on speculation as to whether Yesh Din may have made additional, non-public statements to DAWN. This is the definition of a fishing expedition—and at various points in their brief, even the Coates *Amici* betray their confusion as to the scope and relevance of the requested discovery.

First, neither the Coates *Amici* nor Petitioner address the limited nature of the draft complaint that Petitioner has "authorized" his attorneys to file in Israel. The draft complaint asserts three defamation claims against Yesh Din based on social media posts that the organization published on August 28, 2024—after DAWN provided the August 26 Submission to the U.S. government, after DAWN published the August 26 Article, and after the government announced

3

its sanctions against Petitioner. Draft Yesh Din Compl. ¶¶ 29–52 (App. Ex. C, ECF No. 6-3). As Respondents explain in their Opposition, no amount of discovery against DAWN could possibly be relevant to proving these hypothetical claims against Yesh Din—that is, to proving whether this Israeli organization's public social media posts damaged Petitioner's reputation, whether they were in fact false, or whether Yesh Din demonstrated the requisite intent in publishing them. *See* Opp'n Br. 12–13, 15–18, ECF No. 12; Berman Decl. ¶¶ 19–22, ECF No. 12-2. Neither the Coates *Amici* nor Petitioner explain how Yesh Din's later-in-time posts could have affected DAWN's August 26 Submission or the U.S. government's decision to sanction Petitioner—the sole basis upon which Petitioner attempts to connect DAWN to Yesh Din. Any possible theories supporting the requested discovery are "at best speculative" and fail the "for use" test, *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020), not to mention Petitioner's burdens under the First Amendment and reporters' privileges, *see, e.g.*, *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 140 (E.D.N.Y. 2013); *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5 (2d Cir. 1982).

      Second, neither the Coates *Amici* nor Petitioner can explain why discovery against DAWN seeking material that could support *additional*, purely theoretical claims against Yesh Din would be anything more than an impermissible fishing expedition. As discussed in Respondents' Opposition, the only basis for any such discovery is Petitioner's speculation over whether Yesh Din had secretly communicated defamatory material to DAWN *prior to* the public social media posts that form the crux of Petitioner's hypothetical claims against Yesh Din. Opp'n 12–13, 16–17 (explaining that all of Petitioner's attenuated damages theories involving DAWN rest on such speculation). But Petitioner has not identified any such prior allegedly defamatory communications—he merely "hopes" they exist. *Id.* at 16–17. As the Coates *Amici* themselves

4

acknowledge, "mere speculation that information might be useful will not suffice." Coates *Amici* Br. 18. Before Petitioner can seek discovery on speculative damages theories in a theoretical lawsuit about hypothetical defamatory statements that may or may not exist—while threatening the First Amendment rights of U.S.-based organizations and individuals in the process—he should be required to seek discovery from the entity (Yesh Din) that he speculates has secretly defamed him to determine whether any such communications even exist. *See* Opp'n 18–20 (noting that communications between Yesh Din and DAWN would be obtainable directly from Yesh Din in the foreign jurisdiction). Neither the Coates *Amici* nor Petitioner has pointed to any need that would warrant this extraordinary request for the exercise of § 1782 discretion, particularly before Petitioner has filed his hypothetical Israeli action, tested his actual claims, or pursued discovery from the actual defendant. Instead, both the Coates *Amici* and Petitioner simply recite the legal tests for relevance and rely on blanket assertions of need that are detached from the language of Petitioner's actual draft complaint. *See, e.g.*, Coates *Amici* Br. 18 ("The requested information goes to the heart of Petitioner's claims. Shielding DAWN from unflattering discovery would further harm Petitioner who, without access to the requested information, will be unable to seek relief for the harms he has endured."); Reply Br. 8 ("The requested discovery goes to the very 'heart' of the Israeli defamation case" because material is "essential to proving the falsity, scope, impact, and intent behind the allegations.").

The nature of Petitioner's fishing expedition is further confirmed by the fact that even the Coates *Amici* themselves appear confused by the scope and relevance of the requested discovery, and they provide inconsistent and shifting descriptions of the material sought. For example, the Coates *Amici* claim that "Petitioner has never indicated that he is interested in ascertaining the other parties involved in defaming him." Coates *Amici* Br. 11. Then, they describe Petitioner's

5

requested discovery as seeking "the identities of third parties with whom DAWN communicated regarding Petitioner." *Id.* at 14. Which is it? The Coates *Amici* also cannot decide whether, and what, information is available first from Yesh Din. They argue that the requested discovery seeks to determine "whether Yesh Din was the primary source for DAWN's reporting," information available from Yesh Din itself. *Id.* at 19. But one page later, they argue that this discovery "cannot be obtained elsewhere," including from Yesh Din. *Id.* at 20.

Moreover, early in the brief, the Coates *Amici* describe the requested discovery as "1) internal documents and communications discussing Petitioner; 2) the content of information provided to the U.S. Government; and 3) the identities of third parties with whom DAWN communicated regarding Petitioner." *Id.* at 14. This then changes to "the contents of the dossier, communications with the third parties upon which DAWN relied in drafting the dossier, and internal communications relating to the drafting of the dossier"—expanding, along the way, to include DAWN's internal communications, DAWN's communications with third parties (rather than just their identities), and all communications relied upon in drafting the "dossier," whether or not they referred to Petitioner. *Id.* at 19. This description expands *again* to include "communications with the U.S. Government *related to* the dossier, DAWN's communications with other third-parties that *might have* contributed to the dossier, and any internal discussions DAWN *may have had* when evaluating the veracity of Yesh Din's claims." *Id.* at 20 (emphases added).

The Coates *Amici*'s march towards evermore capacious descriptions of the requested discovery mirrors Petitioner's own inconsistencies and reveals the dragnet nature of Petitioner's requests. *Compare, e.g.*, Reply Br. 3 (characterizing the requested discovery as "any DAWN record 'mentioning, discussing, or concerning' Pilant"), *with, e.g., id.* at 8 (characterizing the

6

requested discovery as "internal DAWN documents/communications, as well as communications between DAWN and third parties"). And as discussed in Respondents' Opposition, such requests fail the "for use" test under § 1782, *see In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420, at *7–8 (S.D.N.Y. June 29, 2015), let alone the heightened showings of relevance and need required under the First Amendment and reporters' privileges, *see Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) ("[C]ourts have . . . consistently emphasized the strictness of the showing that the inquiring party must make."); Opp'n 7–18.

### III.  Respondents Engage in a Wide Range of Constitutionally Protected Activity That Would Be Chilled by the Requested Discovery.

The Coates *Amici* offer nothing new for the Court to consider with respect to Respondents' privilege arguments.[4] The Coates *Amici* merely attempt to sow doubt about the chilling effects of the requested discovery on Respondents' constitutionally protected activities by ignoring the full panoply of First Amendment rights that Respondents have invoked, pretending away entire sections of Respondent Whitson's detailed declaration, and misstating relevant law.

First, the Coates *Amici* suggest that Respondents would not be chilled by the requested discovery because they do not fear "violent reprisals." Coates *Amici* Br. 10–13. The evidence they offer is the fact that Respondents have engaged and continue to engage in public advocacy. The illogic here is absurd on its face: By this reasoning, no public advocacy organization could experience chilling effects on their protected activities. But DAWN, like any human rights organization, engages in its work while confronting, and in spite of, ever-present risks. *See*

---

[4] Notably, neither the Coates *Amici* nor Petitioner dispute that "legally applicable privilege[s]" like the First Amendment and reporters' privileges are statutory prohibitions on discovery, 28 U.S.C. § 1782(a), as opposed to discretionary considerations under *Intel*, *see* Opp'n 7–8.

7

Whitson Decl. ¶¶ 25–27. *Amici* American Civil Liberties Union ("ACLU"), New York Civil Liberties Union ("NYCLU"), and Human Rights First ("HRF") put it succinctly: "Almost by definition, human rights and corruption sanctions threaten the reputations and financial interests of abusive, powerful people—leaving civil society at risk of dangerous retaliation for drawing attention to their misdeeds." ACLU, NYCLU & HRF *Amici* Br. 8, ECF No. 14-1. And Respondent Whitson has noted specific instances of past retaliation suffered by DAWN employees as well as concrete fears of future retaliation related to this proceeding. Whitson Decl. ¶¶ 8, 16–17, 25–27.

But it is not only DAWN employees who are at risk of retaliation; as Respondent Whitson has described, DAWN's partners and sources face acute risks of reprisal, including physical violence. Whitson Decl. ¶¶ 16, 30 ("We are aware of multiple instances where the exposure of activists' or researchers' identities, sometimes through online posts or leaked communications, has led to arrests, physical threats, violence, incarceration, murder, loss of employment, and surveillance by security services."). Indeed, one of DAWN's Israeli partners recently asked "to remove any mention of their identification with [DAWN] for fear that they would be subject to harassment, retaliation, and sanction in Israel." Whitson Decl. ¶ 30. As Respondents have already explained, these fears of reprisal shared by DAWN's partners and sources directly impact Respondents' First Amendment activities. *See* Opp'n 10–11.

Moreover, credible fears of physical violence, whether to employees, partners, witnesses, or victims, comprise just one way in which the requested discovery would impact Respondents' First Amendment rights. Respondent Whitson's declaration also describes many other ways discovery would chill and burden their exercise of First Amendment rights, including online harassment, economic retaliation, censorship, decreased funding, and diversion of resources.

8

Whitson Decl. ¶¶ 26–31. Respondents have easily met their "light" burden to demonstrate chilling effects. *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989).[5]

Second, the Coates *Amici* address only Respondents' right to associational freedom, ignoring the other First Amendment rights that Respondents have invoked, including the rights to speak, listen, and petition. Coates *Amici* Br. 13–17. In so doing, though, the Coates *Amici* confuse two standards: the standard Respondents must meet to make out a *prima facie* showing in opposing civil discovery, *see* Opp'n 8–9 (quoting *Terry*, 886 F.2d at 1355), and the standard a civil plaintiff must meet to prove an affirmative, substantive claim of associational freedom, *see* Coates *Amici* Br. 14 (quoting *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996)). As telling as this confusion is with respect to the helpfulness of the Coates *Amici*'s brief, as discussed above and as Respondents' Opposition makes plain, Respondents' showing is sufficient under any standard. *See* Opp'n 9–11.

Third, circumscribing or imposing limitations on the discovery that Petitioner can obtain from DAWN—rather than rejecting Petitioner's Application in toto—would not alleviate these chilling effects. *See* Opp'n 24–25. At the outset of this or any human rights investigation, DAWN could not know in advance what information it should share with the public, with government agencies, or retain internally. DAWN cannot predict what sort of discovery its adversaries might seek against it, or what amount of discovery courts would approve in any given case. If any discovery is permitted based on the weak and tenuous arguments that Petitioner has presented in this proceeding, Respondents and their partners and sources will be chilled from communicating

---

[5] Respondents' uncontroverted demonstration of chilling effects is corroborated by the accounts of *Amici* ACLU, NYCLU, and HRF, which illustrate how "compelled disclosure of nonpublic, internal, and third-party communications will have a widespread chilling effect on domestic human rights advocates and their foreign sources, who will likely self-censor their speech out of fear of online targeting, repression, and violence." ACLU, NYCLU & HRF *Amici* Br. 9–11, 16–17.

9

about and documenting abuses in light of the uncertainty surrounding the ever-present potential of future § 1782 discovery. Whitson Decl. ¶¶ 27, 31. Further, this pending litigation—and the mere prospect that Respondents could be subject to discovery related to its protected activities—has *already* resulted in resource constraints, organizational burdens, and concerns from partners and donors. Whitson Decl. ¶¶ 28–30. These effects will be exacerbated if Respondents are in fact subjected to any amount of discovery here. Whitson Decl. ¶¶ 29, 31.

Finally, the Coates *Amici* contend that the requested discovery is "not protected under the reporters' privilege" because "DAWN has not provided a single affidavit indicating that . . . any of its . . . sources requested or expected that their communications would be confidential." Coates *Amici* Br. 20–21. Here again they muddle the relevant legal standard, as the reporters' privilege applies to both confidential and nonconfidential materials. *See Schiller v. City of New York*, 245 F.R.D. 112 (S.D.N.Y. 2007); Opp'n 14–15. More to the point, though, Respondent Whitson's declaration states expressly that DAWN provided assurances of confidentiality to sources—not just as a general matter, but specifically with respect to its investigation related to Petitioner and its August 26 Submission. Whitson Decl. ¶ 22 ("DAWN relied on numerous credible and corroborating sources, including reputable news media outlets, prominent human rights organizations, and confidential sources and witnesses to whom DAWN, consistent with its investigative practice, provided assurances of confidentiality given the sensitive nature of the information and fears of retaliation."). The Coates *Amici* ignore this concrete assertion that undermines their argument.[6]

---

[6] Grasping for straws, the Coates *Amici* also attempt to make hay out of an errant hyperlink over the words "comprehensive dossier" in DAWN's August 26 Article, claiming that this indicates that DAWN did not intend to keep its August 26 Submission confidential. *See* Coates *Amici* Br. 10–11. The link is a typo that simply re-directs right back to the August 26 Article. At no point did it direct to DAWN's confidential August 26 Submission, which DAWN has never posted publicly.

The Court should deny the Application in its entirety because no amount of discovery here would be "for use" in or relevant—let alone necessary or central—to Petitioner's hypothetical foreign proceeding or free from far-reaching burdens on Respondents' First Amendment freedoms.

## CONCLUSION

For the foregoing reasons, as well as those contained in Respondents' Opposition as well as the Brief of *Amici Curiae* ACLU, NYCLU, and HRF, Petitioner's Application for discovery pursuant to 28 U.S.C. § 1782 should be denied.

DATED: May 28, 2025

Timothy W. Grinsell
Margaret B. Hoppin
Hoppin Grinsell LLP
11 Hanover Street
New York, NY 10005
(646) 475-9554
tim@hoppingrinsell.com

Respectfully submitted,

 */s/ Jake Karr*

Jake Karr
Technology Law & Policy Clinic
245 Sullivan Street
New York, NY 10012
(212) 998-6042
jake.karr@nyu.edu

*Counsel for Respondents*
*Democracy for the Arab World Now, Inc. and Sarah Leah Whitson*

11

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 3,346 words. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

*/s/ Jake Karr*
Jake Karr
